## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| YOLANDA VERNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. |
| | ) | |
| FAYETTE COUNTY SCHOOL | ) | **JURY TRIAL DEMANDED** |
| DISTRICT | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Mrs. Yolanda Vernon ("Plaintiff" or "Mrs. Vernon") submits the

following Complaint for Damages and Equitable Relief against Fayette County

School District ("Defendant" or "FCSD") and shows as follows:

## INTRODUCTION

1.

Mrs. Vernon suffered a mental health crisis that required her to take leave

from work, but when she told her employer, FCSD, she was punished with

immediate termination. FCSD claims it had to fire Mrs. Vernon because she was a

threat to other employees, but the reality is that she simply needed the mental health

treatment she requested, and FCSD utterly refused to investigate that need, violating

Mrs. Vernon's rights under the Americans with Disabilities Act Amendments Act,

42 U.S.C. § 12112 et seq. ("ADAAA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("the Rehabilitation Act"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").

2.

Plaintiff asserts mixed motive and single motive discrimination and retaliation claims under the ADAAA, the Rehabilitation Act, and the FMLA. She seeks back pay and lost economic benefits of her employment, liquidated damages, reinstatement or front pay in lieu of reinstatement, compensatory and punitive damages, and her reasonable attorney's fees and costs.

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)).

4.

The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue is proper under 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)) and 28 U.S.C. § 1391(b) and (c), as every act of which Plaintiff complains occurred in the Newnan Division of the United States District Court for the Northern District of Georgia.

## PARTIES

### 5.

Mrs. Yolanda Vernon is a citizen of the United States residing in Fayette County in the State of Georgia. At all relevant times, Plaintiff was employed by FCSD.

### 6.

Defendant is a public school district organized under Georgia law and is a local governmental entity providing public services within the boundaries of the Newnan Division of the Northern District of Georgia. Defendant may be served by personal service on its Superintendent, Dr. Jonathan S. Patterson, at his place of employment, 210 Stonewall Avenue West, Fayetteville, GA 30214

### 7.

Defendant is an employer within the meaning of the ADAAA, 42 U.S.C. § 12111(5), the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), and the Rehabilitation Act.

### 8.

Defendant is subject to the Rehabilitation Act as it constitutes a "program or activity receiving Federal financial assistance."

9.

At all times while Plaintiff was employed by Defendant, there were 50 or more employees employed by FCSD within 75 miles of her primary worksite located in Fayette County, Georgia. 29 U.S.C. § 2611(2)(B)(ii).

10.

Plaintiff is an "employee" as defined by the ADAAA and the Rehabilitation Act, and an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

11.

Plaintiff is a "qualified individual with a disability" as that term is used and defined by the ADAAA.

## ADMINISTRATIVE PROCEEDINGS

12.

Plaintiff timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff received the Notice of Right to Sue from the EEOC, and has complied with all other conditions precedent to assert her claims under the ADAAA in this lawsuit.

# FACTS

### 13.

Mrs. Vernon was employed with Fayette County Schools as an Assistant Site Coordinator of After School Programs from January 1, 2012 until her termination on May 14, 2020.

### 14.

Mrs. Vernon began as a part-time aide and eventually transitioned into an assistant site coordinator. In this role, she worked at an after-school program in Peachtree City, Georgia.

### 15.

During Mrs. Vernon's tenure with Fayette County Schools, she had a record of good performance.

### 16.

Mrs. Vernon suffered from severe anxiety and major depressive disorder.

### 17.

On February 10, 2020, Mrs. Vernon was driving to school when she was experiencing a panic attack and had thoughts of driving her car into oncoming traffic.

### 18.

Instead of driving to school, Mrs. Vernon drove to her doctor's office and sought medical attention.

19.

An employee at Mrs. Vernon's doctor's office called an ambulance to treat Mrs. Vernon, which resulted in Mrs. Vernon being hospitalized and discharged on the same day.

20.

On February 11, 2020, Mrs. Vernon returned to her doctor's office to request FMLA paperwork.

21.

For reasons unbeknownst to Mrs. Vernon, her doctor's office called the police and Mrs. Vernon was unwillingly admitted to Riverwood Behavior Center.

22.

While Mrs. Vernon was being transported to Riverwood in the back of a police car, her husband advised Defendant that his wife would not be at work that day because of medical issues.

23.

Mrs. Vernon's husband, Mr. Vernon, spoke with Erin Roberson, the District's Director of Human Resources, on February 11.

24.

Ms. Roberson claimed that Mrs. Vernon made threats to harm her supervisor, Sharon Walters. Mr. Vernon explained that this is not correct, but also shared that Mrs. Vernon would be filing for FMLA leave.

25.

Mrs. Vernon was discharged from Riverwood facility on February 13, 2020.

26.

Mrs. Vernon was ultimately approved to take FMLA leave from February 11, 2020 through May 14, 2020.

27.

Before being approved for FMLA leave, but after submitting the paperwork to Ms. Roberson, Ms. Roberson asked Mrs. Vernon to come into the school and attend a meeting regarding her FMLA paperwork.

28.

Ms. Roberson said she was confused because she received two sets of FMLA forms requesting different periods of medical leave. Mrs. Vernon did clarify that she needed FMLA leave until May 14, 2020.

29.

Mrs. Vernon met with Ms. Roberson and Assistant Superintendent Tom Gray in person on February 24, 2020.

30.

During the meeting, Mr. Gray asked Mrs. Vernon if she was ready to return to work right now.

31.

Mrs. Vernon explained that she was on medical leave and not ready to return to work yet.

32.

However, Ms. Roberson said that she would be recommending Mrs. Vernon's termination to the superintendent.

33.

Ms. Roberson claimed that the police told her that Mrs. Vernon threatened harm on one of Defendant's employees.

34.

Mrs. Vernon explained that she never threatened harm on any school employee, or anyone else. She said she loved her job and would never cause harm to anyone else.

35.

Ms. Roberson insisted that Mrs. Vernon quit.

36.

When Mrs. Vernon refused to quit, Ms. Roberson said that she would proceed with recommending Mrs. Vernon's termination.

37.

On February 26, 2020, Mrs. Vernon emailed Ms. Roberson and others making it clear that she would not be resigning from her position, but was requesting medical leave while she recovered from severe anxiety and depression.

38.

On April 24, Ms. Roberson sent Mrs. Vernon a letter notifying her that FMLA leave will be ending on May 14, 2020, and that Mrs. Vernon was terminated effective at the end of her FMLA leave.

39.

Mrs. Vernon's employment was officially terminated on May 14, 2020.

## COUNT I

## RETALIATION IN VIOLATION OF THE FMLA

40.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

41.

Mrs. Vernon was an eligible employee who was entitled to a total of 12 workweeks of leave because of her own serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

42.

By terminating Mrs. Vernon's employment because she exercised and attempted to exercise rights under 29 U.S.C. § 2612(a)(1)(D), Defendant retaliated against Mrs. Vernon in violation of the FMLA.

43.

Defendant's actions in retaliating against Mrs. Vernon because she exercised rights under the FMLA were committed with reckless disregard for her right to take up to 12 workweeks of leave time because of her own serious health condition, and in violation of 29 U.S.C. § 2612(a)(1)(D).

44.

The effect of Defendant's actions has been to deprive Mrs. Vernon of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits because she exercised FMLA rights.

45.

Accordingly, and because the violations of the FMLA committed by Defendant, Mrs. Vernon is entitled to both equitable and monetary relief pursuant to

29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

46.

Mrs. Vernon is also entitled to liquidated damages for the willful violation of her rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT II**

**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

47.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

48.

At all relevant times, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

49.

At all times relevant, Mrs. Vernon was an individual with a disability as defined by the ADAAA, 42 U.S.C. § 12102(1), inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

50.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and she was able to perform the essential functions of her job with or without a reasonable accommodation.

51.

Defendant intentionally discriminated against Mrs. Vernon by subjecting her to adverse employment actions including, but not limited to, the termination of her employment, because of her disabilities.

52.

Defendant violated Mrs. Vernon's rights under the ADAAA, 42 U.S.C. § 12112, by discriminating against her because of her disabilities.

53.

As a direct and proximate result of Defendant's intentional discrimination, Mrs. Vernon has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

54.

Defendant's actions have caused and will continue to cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

55.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mrs. Vernon's federally protected rights, and she is therefore entitled to punitive damages.

56.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## **COUNT III**

### **RETALIATION IN VIOLATION OF THE ADAAA**

57.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

58.

At all relevant times, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

59.

At all times relevant, Mrs. Vernon was an individual with a disability as defined under the ADAAA, 42 U.S.C. § 12102(1), inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

60.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of her job with or without a reasonable accommodation.

61.

Defendant intentionally retaliated against Mrs. Vernon by, among other things, terminating her employment after she requested a reasonable accommodation in the form of medical leave of a definite duration, and because of her disabilities.

62.

Defendant's actions amount to a violation of the ADAAA, which prohibits retaliation because an individual requests a reasonable accommodation or seeks to exercise rights under the Act. 42 U.S.C. § 12203.

63.

As a direct and proximate result of Defendant's unlawful retaliation against Mrs. Vernon, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

64.

Defendant's actions have caused, continue to cause, and will cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

65.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mrs. Vernon's federally protected rights, and she is therefore entitled to punitive damages.

66.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT IV
## DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

67.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

68.

Discrimination claims under the Rehabilitation Act are governed by the same standards used in cases under the ADAAA. *Cash v. Smith*, 231 F.3d 1301, 1304 (11th Cir. 2000).

69.

At all relevant times, Defendant has been a "program or activity receiving federal financial assistance," and therefore subject to the requirements of the Rehabilitation Act.

70.

At all times relevant, Mrs. Vernon was an individual with a disability, inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

71.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability, and she was able to perform the essential functions of her job with or without a reasonable accommodation.

72.

Defendant intentionally discriminated against Mrs. Vernon by subjecting her to adverse employment actions including, but not limited to, the termination of her employment, because of her disabilities.

73.

Defendant violated Mrs. Vernon's rights under the Rehabilitation Act by discriminating against her on the basis of her disabilities.

74.

As a direct and proximate result of Defendant's intentional discrimination, Mrs. Vernon has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

75.

Defendant's actions have caused and will continue to cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

76.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT V
## RETALIATION IN VIOLATION OF THE ADAAA

77.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

78.

At all relevant times, Defendant has been subject to the ADAAA.

79.

At all times relevant, Mrs. Vernon was an individual with a disability as defined under the ADAAA, 42 U.S.C. § 12102(1), inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

80.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of her job with or without a reasonable accommodation.

81.

Defendant intentionally retaliated against Mrs. Vernon by, among other things, terminating her employment after she requested a reasonable accommodation in the form of medical leave of a definite duration, and because of her disabilities.

82.

Defendant's actions amount to a violation of the ADAAA, which prohibits retaliation because an individual requests a reasonable accommodation or seeks to exercise rights under the Act. 42 U.S.C. § 12203.

83.

As a direct and proximate result of Defendant's unlawful retaliation against Mrs. Vernon, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

84.

Defendant's actions have caused, continue to cause, and will cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

85.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mrs. Vernon's federally protected rights, and she is therefore entitled to punitive damages.

86.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VI

## RETALIATION IN VIOLATION OF THE REHABILITATION ACT

87.

Plaintiff incorporates paragraphs 1 through 39 as if set forth fully herein.

88.

At all relevant times, Defendant has been subject to the Rehabilitation Act.

89.

At all times relevant, Mrs. Vernon was an individual with a disability as defined under the ADAAA, 42 U.S.C. § 12102(1), inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

90.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of her job with or without a reasonable accommodation.

91.

Defendant intentionally retaliated against Mrs. Vernon by, among other things, terminating her employment after she requested a reasonable accommodation in the form of medical leave of a definite duration, and because of her disabilities.

92.

Defendant's actions amount to a violation of the Rehabilitation Act, which prohibits retaliation because an individual requests a reasonable accommodation or seeks to exercise rights under the Act.

93.

As a direct and proximate result of Defendant's unlawful retaliation against Mrs. Vernon, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

94.

Defendant's actions have caused, continue to cause, and will cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

95.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mrs. Vernon's federally protected rights, and she is therefore entitled to punitive damages.

96.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VII

## FAILURE TO ACCOMMODATE UNDER THE ADAAA

97.

Plaintiff incorporates paragraphs 1 through 39 by reference as if set forth fully herein.

98.

At all relevant times, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

99.

At all times relevant, Mrs. Vernon was an individual with a disability as defined under the ADAAA, 42 U.S.C. § 12102(1), inasmuch as she had mental and physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

100.

At all relevant times, Mrs. Vernon has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of her job with or without a reasonable accommodation.

101.

Defendant intentionally discriminated against Mrs. Vernon by failing and refusing to accommodate her requests for reasonable accommodation, including but not limited to, by terminating her after she requested an accommodation and not allowing her to return to work.

102.

Defendant's actions amount to a violation of 42 U.S.C. § 12112(a)-(b)(5)(A), which prohibits discrimination on the basis of disability in the form of not making reasonable accommodations for disabilities.

103.

As a direct and proximate result of Defendant's intentional discrimination and failure and refusal to accommodate Mrs. Vernon, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

104.

Defendants' actions have caused and will continue to cause Mrs. Vernon to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

105.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mrs. Vernon's federally protected rights, and she is therefore entitled to punitive damages.

106.

Mrs. Vernon is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the

following relief be granted:

A.    That the Court take jurisdiction of this matter;

B.    That process be served;

C.    That the Court award Plaintiff her back pay and lost economic benefits

of employment and front pay in an amount to be determined at the trial of this case;

D.    That the Court award compensatory damages in an amount to be

determined by the trier of fact;

E.    That the Court award Plaintiff liquidated damages under the FMLA;

F.    That the Court award Plaintiff her costs of litigation in this action and

her reasonable attorney's fees;

G.    That the Court grant to Plaintiff the right to have a trial by jury on all

issues triable to a jury; and

H.    That the Court grant such additional relief as the Court deems proper

and just.

Respectfully submitted this 23rd day of March, 2022.

**HALL & LAMPROS LLP**

By:    */s/ Rachel Berlin Benjamin*
       Rachel Berlin Benjamin
       Georgia Bar No. 707419
       rachel@hallandlampros.com
       Brian J. Sutherland

Georgia Bar No. 105408
brian@hallandlampros.com
400 Galleria Pkwy SE, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477

*Counsel for Plaintiff*